IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DENEISE INGRAM, as legal guardian for KAREN CHANDLER,<br><br>Plaintiff,<br><br>v.<br><br>COVENANT CARE MIDWEST, INC. d/b/a NEBRASKA SKILLED NURSING AND REHABILITATION, and COVENANT CARE, INC.,<br><br>Defendants. | CASE NO. _____<br><br>**NOTICE OF REMOVAL** |

COME NOW, Covenant Care Midwest, Inc. d/b/a Nebraska Skilled Nursing and Rehabilitation and Covenant Care, LLC, incorrectly named herein as Covenant Care, Inc. (collectively "Covenant Care") pursuant to 28 U.S.C. §§ 1441 & 1446, and respectfully show as follows:

1. On or about February 23, 2009, Plaintiff, Deneise Ingram, as legal guardian for Karen Chandler, ("Plaintiff") filed a Complaint in the District Court of Douglas County, Nebraska against Covenant Care (the "Douglas County Action"). A true and correct copy of the Complaint is attached as Exhibit A.

2. Covenant Care has not filed an Answer.

3. Plaintiff's Complaint admits that the "amount in controversy relating to all counts and causes of action forming the basis of this lawsuit, exclusive of interest and costs, is far in

4834-8813-9523.1

excess of any minimum jurisdiction requirements of this Court or any Federal Court with diversity jurisdiction."

4. Covenant Care Midwest, Inc. d/b/a Nebraska Skilled Nursing and Rehabilitation and Covenant Care, LLC are California corporations with their principal place of business in Aliso Viejo, CA.

5. Plaintiff is a citizen of the State of Nebraska.

6. This Court has original jurisdiction of this civil action for the reason that the Plaintiff asserts a claim exceeding $75,000.00, exclusive of interest and costs, and this claim is between citizens of different states pursuant to 28 U.S.C. § 1332(a)(1) and (c).

7. Venue is proper in this District under 28 U.S.C. § 1441(a) because this District embraces the place in which the removed action was pending.

8. Removal is timely under 28 U.S.C. § 1446(b) as it is made within 30 days after Covenant Care was served the Complaint.

9. Covenant Care will promptly give written notice to Plaintiff of its filing of this Notice of Removal and shall file a copy of the Notice of Removal with the Clerk of the Douglas County District Court pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Covenant Care hereby removes this action from the District Court of Douglas County, Nebraska, bearing caption Deneise Ingram, as legal guardian for Karen Chandler v. Covenant Care Midwest, Inc. d/b/a Nebraska Skilled Nursing and Rehabilitation and Covenant Care, Inc. Doc. 1092 Page 643, to the United States District Court for the District of Nebraska.

Dated this 26th day of March, 2009.

        COVENANT CARE MIDWEST, INC.
        D/B/A NEBRASKA SKILLED NURSING
        AND REHABILITATION and COVENANT
        CARE, INC., Defendants.

By: s/ Robert M. Slovek
    Robert M. Slovek #17798
    Jack D. Williams #23993
    Kutak Rock LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE 68102-2186
    (402) 346-6000

## CERTIFICATE OF SERVICE

This certifies the undersigned attorney has caused service of the **NOTICE OF REMOVAL** to be made pursuant to FED. R. CIV. P. 5(b) and (d) by mailing by ordinary first-class mail, postage prepaid, to the last known address of the following attorneys representing parties to this action on this 26th day of March, 2009:

Matthew G. Miller
6910 Pacific Street, Suite 103
Omaha, Nebraska 68106
402-558-4900

By: s/ Jack D. Williams
    Jack D. Williams

03/09/2009 MON 11:33   FAX                                                                                ☒004/017

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| DENEISE INGRAM, as Legal Guardian for KAREN CHANDLER, | DOC. 1092 PAGE 643 |
| Plaintiff, | |
| v. | COMPLAINT |
| COVENANT CARE MIDWEST, INC., d/b/a NEBRASKA SKILLED NURSING AND REHABILITATION, and COVENANT CARE, INC. | Assigned to Judge Coffey |
| Defendant. | |

*JOHN M. FR...* *FEB 25 2009*

COMES NOW the Plaintiff, Deneise Ingram, the Legal Guardian of Karen Chandler and for her cause of action against the Defendants alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Deneise Ingram is the duly appointed Legal Guardian for Karen Chandler, having been so appointed by the Douglas County Court, Probate Division on June 19, 2008. Attached hereto is a true and correct copy of the Order of Appointment as Exhibit A.

2. Karen Chandler was a resident of Nebraska Skilled Nursing and Rehabilitation, located at 7410 Mercy Road, Omaha, Nebraska from on or about March 12, 2008 until on or about March 31, 2008.

3. Defendant Covenant Care Midwest, Inc., d/b/a Nebraska Skilled Nursing and Rehabilitation is a foreign Corporation doing business in the State of Nebraska. The agent for service of process for Covenant Care Midwest, Inc., d/b/a Nebraska Skilled Nursing and Rehabilitation is CT Corporation System, Suite 500, 301 S. 13th Street, Lincoln, NE 68508.

4. Defendant Covenant Care Inc. is a California corporation doing business in the State of Nebraska. The agent for service of process for Covenant Care, Inc. is Andrew F. Torok, 27071 Aliso Creek Rd., Ste. 100, Aliso Viejo, CA 92656.

5. The Court has jurisdiction over the subject matter of and parties to this action, and venue is proper in this Court.

6. The amount in controversy relating to all counts and causes of action forming the basis of this lawsuit, exclusive of interest and costs, is far in excess of any minimum jurisdiction requirements of this Court or any Federal Court with diversity jurisdiction.

1


EXHIBIT A

## COMMON VENTURE/ENTERPRISE

7.  Defendants Covenant Care Midwest, Inc., d/b/a Nebraska Skilled Nursing and Rehabilitation and Covenant Care Inc were engaged in a common venture/enterprise during Karen Chandler's residency. Each Defendant had a shared community of interest in the object and purpose of the undertaking for which the nursing home known as Nebraska Skilled Nursing was being operated/used. Each Defendant had an equal right to share in the control of the operation of the nursing home during Karen Chandler's residency regardless of whether such right was actually exercised.

8.  The Defendants controlled the operation, planning, management, and quality control of the nursing home facility. The authority exercised by the Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policy and procedure manuals used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by Defendants.

9.  These companies operated as a common venture/enterprise for the purpose of streamlining and furthering their similar business interests, as all entities were ultimately controlled by the same corporation.

10. At all relevant times mentioned herein, the Defendants owned, operated and/or controlled, either directly or through the agency of each other and/or other diverse subalterns, agents, subsidiaries, servants or employees the operation of Nebraska Skilled Nursing in Omaha, Nebraska.

11. Because the Defendants named herein and others were engaged in a common venture/enterprise before and throughout Karen Chandler's residency, the acts and omissions of each participant in the common venture/enterprise are imputable to all other participants. The actions of the Defendants and each of its servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

## FACTUAL ALLEGATIONS AGAINST THE DEFENDANTS

12. On or about March 12, 2008, Karen Chandler, at the age of 53 was admitted to Nebraska Skilled Nursing.

13. The Defendants were aware of Karen Chandler's medical condition and the care she

2

03/09/2009 MON 11:34   FAX                                                                                    ☒006/017

required when they represented that they could adequately care for her needs.

14. In an effort to ensure that Karen Chandler and other residents whose care was partially funded by the government were placed at Nebraska Skilled Nursing, the Defendants held themselves out to the Nebraska Department of Health and Human Services (DHHS) and the public at large as being:

   a) Skilled in the performance of nursing, rehabilitative and other medical support services;

   b) Properly staffed, supervised, and equipped to meet the total needs of its nursing home residents;

   c) Able to specifically meet the total nursing home, medical and physical therapy needs of Karen Chandler and other residents like her; and

   d) Licensed by DHHS and complying on a continual basis with all rules, regulations, and standards established for nursing homes under *Neb. Rev. Stat. § 71-401 et seq.* and *Neb. Rev. State § 71-6001 et seq.*

   e) Licensed by DHHS as a nursing facility that provides care and treatment of residents with Alzheimer's disease and Age related dementia under The Alzheimer's Care Disclosure Act, *Neb. Rev. Stat. §§ 71-516 to 71-516.04.*

15. The Defendants failed to discharge their obligations of care to Karen Chandler, with a conscious disregard for her rights and safety. At all times mentioned herein, the Defendants, through their corporate officers and administrators, each had knowledge of, ratified and/or otherwise authorized all of the acts or omissions that caused the injuries suffered by Karen Chandler, including the hiring and retention of unqualified and untrained nursing staff, as more fully set forth below within each of the respective counts. Defendants knew that this facility was chronically understaffed and that because of poor staffing levels, the nursing staff could not provide even the minimum standard of care to the weak and vulnerable residents of Nebraska Skilled Nursing. As a result, the residents deteriorated unnecessarily. The severity of the recurrent negligence inflicted upon Karen Chandler while under the care of the Defendants accelerated the deterioration of her health and physical condition by allowing her to become so severely dehydrated that she suffered irreversible vascular damage to her legs resulting in bilateral amputation of her legs.

16. These injuries were foreseeable to the Defendants and caused Karen Chandler to lose personal dignity and to suffer unnecessary pain and suffering, degradation, emotional distress, and hospitalizations that would have been unnecessary had it not been for the conduct of the Defendants.

17. At all relevant times herein, the Defendants operated and managed the facility

according to a specific plan that would maximize profits by reducing the staffing levels needed to provide care to residents that complied with federal and state regulations governing skilled nursing facilities. Specifically, the Defendants intentionally and with knowing and/or reckless disregard for the consequences of their actions caused staffing levels to be set at a level where the personnel on duty at any given time could not reasonably tend to the needs of their respective assigned residents, such as, by way of example only, assisting with feeding, assisting with toileting, and repositioning residents. Upon information and belief, the Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and that disregarded patient acuity levels as well as the minimal time required for such personnel to perform the essential functions of the job. All of these acts of malfeasance directly affected Karen Chandler and the other residents of Nebraska Skilled Nursing, and were known to the Defendants and their corporate officers and administrators identified herein, as they were apprised by their employees as well as employees of the Department of Health and Human Services.

18. The Defendants controlled the operation, planning, management, and quality control of Nebraska Skilled Nursing. The authority exercised by the Defendants over the nursing facility included, but was not limited to, budgeting, marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by Nebraska Skilled Nursing, Federal and State reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by the Defendants.

19. Upon information and belief, the Defendants marketed their facility in the community through healthcare providers, including physicians and hospitals, seeking th have residents admitted to the facility who had higher medical and custodial care needs than have previously existed in the population of residents in the Defendants chain of nursing homes.

20. The Defendants' act of increasing the number of high acuity residents contemplated reimbursement schemes by the Medicare and Medicaid programs that were available to residents of Nebraska Skilled Nursing and other nursing facilities owned and operated by Defendants.

21. The Defendants knew that this increase in the acuity care level of the resident population would substantially increase the need for staff and services, as well as supply, to be provided to the new resident population.

22. Plaintiff alleges that on all of the occasions complained herein, Karen Chandler was under the care, supervision, and treatment of the Defendants and that the injuries complained herein were proximately caused by the acts and omissions of the Defendants.

23. The Defendants have vicarious liability for the acts and omissions of all persons or entities under their control, either directly or indirectly, including employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Karen Chandler.

## CLAIMS AGAINST THE DEFENDANTS
## COUNT ONE - NEGLIGENCE

24. Plaintiff incorporates all allegations set forth in paragraphs 1 through 23.

25. Defendants owed a non-delegable duty to residents, including Karen Chandler, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

26. Defendants owed a non-delegable duty to residents, including Karen Chandler, to exercise reasonable care in providing care and services in a safe and beneficial manner.

27. Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse, and neglect of Karen Chandler.

28. Defendants owed a non-delegable duty to assist all residents, including Karen Chandler, in attaining and maintaining the highest level of physical, mental and psychological well-being.

29. Defendants owed a non-delegable duty to residents, including Karen Chandler, to hire, train and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

30. Defendants had a responsibility to hire sufficient nurses and aides and to supervise and ensure that all nurses and staff of Nebraska Skilled Nursing were meeting the needs of its residents and providing appropriate nursing care to all of its residents, including Karen Chandler.

31. Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse and neglect of Karen Chandler. The negligence of the Defendants includes, but is not limited to, the following acts and omissions:

   a) The failure to provide appropriate care and assessment of Karen Chandler's condition;

   b) The failure to provide Karen Chandler with timely medical treatment;

   c) The failure to routinely monitor the safety of Karen Chandler;

    d)    The failure to adequately instruct, train and supervise employees regarding the correct procedures for monitoring patient's condition;

    e)    The failure to adequately instruct, train and supervise employees regarding proper methods for recognizing dehydration;

    f)    The failure to provide Karen Chandler the necessary care and services to attain and maintain the highest practicable physical well-being;

    g)    The failure to provide agents, servants and employees adequate training, instruction, and supervision in caring for its elderly patients;

    h)    Entrusting Karen Chandler to the care of unskilled, unqualified, and unfit personnel;

    i)    The failure to provide and maintain an adequate number and suficient staff to provide appropriate treatment, car and/or observation;

    j)    The failure to require strict compliance with their own standards, bylaws, rules, and regulations for assessment and care of patients with Karen Chandler's medical condition.

32.    As a direct and proximate result of the negligence of Defendants, Karen Chandler suffered mental anguish and conscious fear from surgery, possible death, extreme pain and suffering, and incurred medical expenses.

33.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed in the above complaint. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Karen Chandler's injuries, all of which were foreseeable.

34.    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Karen Chandler.

35.    The negligence of any caregiver involved in the treatment of Karen Chandler is attributable to each and all Defendants, joint and severally, by virtue of the doctrine of Respondeat Superior and/or apparent agency.

## COUNT TWO - BREACH OF CONTRACT

36.    Plaintiff incorporates all allegations set forth in paragraphs 1 through 35.

37.    Karen Chandler was a patient and resident of Nebraska Skilled Nursing pursuant to a written "Admission Agreement".

38.    Defendants breached the Admission Agreement for the reasons discussed in

6

paragraphs 1 through 23 and by failing to strictly comply with their own standards, bylaws, rules, and regulations for the assessment and care of patients.

39.   As a direct and proximate cause of Defendants' breach, Karen Chandler suffered damages including mental anguish and conscious fear from surgery, possible death, extreme pain and suffering, and incurred medical expenses.

## COUNT THREE - BREACH OF FIDUCIARY DUTY

40.   Plaintiff incorporates paragraphs 1 through 39 as fully set forth herein.

41.   At all times material, Nebraska Skilled Nursing held the Defendant facility out to the general public, hospital and physicians as specifically qualified in the provision of care and services to elderly and infirm persons who, because of the infirmities of aging or other disability, required medical supervision.

42.   At all times material, the residents, physicians, hospital discharge coordinators, and families of the residents, including Karen Chandler and her family, reasonably and justifiably relied upon the professed superior knowledge, skill and abilities of Nebraska Skilled Nursing in providing care and services to persons such as Karen Chandler.

43.   At all times material, due to physical infirmities and the process of aging, Karen Chandler was impaired in her ability to adequately care for herself and was therefore dependent upon Nebraska Skilled Nursing and its staff to provide her with food and water, needed medicines and assistance with her activities of daily living.

44.   That as a result of the special relationship between Nebraska Skilled Nursing, Karen Chandler and her family, Nebraska Skilled Nursing owed a fiduciary duty to Karen Chandler.

45.   The acts and omissions of the Defendants were motivated by a desire to increase the profitability of Nebraska Skilled Nursing by reducing expenditures for needed staff, training, supervision, and care to levels which would predictably lead to severe injury.

46.   The Defendants owed a non-delegable duty to assist all residents, including Karen Chandler, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being. The Defendants had a responsibility to hire sufficient nurses and aides to supervise all nurses and aides to ensure that residents such as Karen Chandler attained and maintained their highest level of physical, mental, and psychosocial well-being.

47.   The Defendants failed to meet the applicable standards of care and violated their duty of care to Karen Chandler through mistreatment, abuse and neglect. The Defendants consciously failed to supervise nurses and aides and faled to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Karen Chandler the requisite care, and as a result the following

7

03/09/2009 MON 11:37 FAX                                                                    ☒011/017

negligent acts occurred as set forth in this paragraph. The negligence of the Defendants includes, but is not limited to, one or more of the following acts and omissions:

    a)    The failure to ensure that Karen Chandler received the following:

        1.    timely and accurate care assessments;

        2.    prescribed treatment, medication, and diet;

        3.    necessary supervision; and

        4.    timely nursing and medical intervention due to a significant change in condition.

    b)    The failure to provide, implement and ensure that an adequate nursing care plan for Karen Chandler was followed by nursing personnel;

    c)    The failure to provide proper treatment and assessment to Karen Chandler;

    d)    The failure to provide, implement and ensure adequate nursing care plan revisions and modifications as the needs of Karen Chandler changed;

    e)    The failure to adequately and appropriately monitor Karen Chandler and recognize significant changes in her health status;

    f)    The failure to provide care, treatment, and medication in accordance with physician's orders;

    48.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Defendants was a proximate cause of Karen Chandler's injuries, which were all foreseeable to Defendants.

    49.    The Defendants owed a non-delegable duty to residents, including Karen Chandler, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

    50.    The Defendants owed a non-delegable duty to residents, including Karen Chandler, to exercise reasonable care in providing care and services in a safe and beneficial manner.

    51.    The Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse, and neglect of Karen Chandler.

    52.    The Defendants owed a non-delegable duty to residents, including Karen Chandler, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

53.     The Defendants had a responsibility to hire sufficient nurses and aides and to supervise and ensure that all nurses and staff of Nebraska Skilled Nursing were meeting the needs of its residents and providing appropriate nursing care to all of its residents, including Karen Chandler.

54.     The Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse and neglect of Karen Chandler. The negligence of the Defendants includes, but is not limited to, the following acts and omissions:

   a)   The failure to comply in providing the minimum number of staff necessary to assist the residents with their needs;

   b)   The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Karen Chandler received appropriate nursing care, in accordance with Nebraska Skilled Nursing's own policies and procedures and the Rules of the Nebraska Department of Health and Human Services;

   c)   The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of patient care, the quality of patient care, or misconduct by employees at Nebraska Skilled Nursing, irrespective of whether such complaint derived from a state or federal survey agency, a resident of the facility, an employee of the facility or any interested person;

   d)   The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at Nebraska Skilled Nursing;

   e)   The failure by the members of the governing body of Nebraska Skilled Nursing to discharge their legal and lawful obligation by:

        1.  ensuring that the rules and regulations designed to protect the health and safety of residents, such as Karen Chandler, as promulgated by the Nebraska Department of Health and Human Services were consistently complied with on an ongoing basis;

        2.  ensuring that the resident care policies for Karen Chandler were consistently complied with on an ongoing basis, and;

        3.  Ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

   f)   The failure to properly evaluate and assess Karen Chandler's dehydration risk;

   g)   The failure to timely arrange for the transport of Karen Chandler to a hospital for treatment and evaluation following her dehydration;

9

    h)    The failure to maintain medical records of Karen Chandler that are complete, accurately documented, readily accessible, and systematically organized in accordance with accepted professional standards and practices with respect to her diagnosis, treatment, and the assessment and establishment of appropriate care plans and treatment;

    i)    The failure to properly notify the family of Karen Chandler of significant changes in her health status;

    j)    The failure to properly and timely notify the attending physician of Karen Chandler of significant changes in her physical condition, to wit: failure to transport Karen Chandler to a hospital immediately following her dehydration that resulted in bilateral amputation of her legs, unnecessary pain, agony, and suffering on the part of Karen Chandler.

55. As a direct and proximate result of the breach of duties owed by Nebraska Skilled Nursing, Karen Chandler suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing treatment, and aggravation of a previously existing condition. These conditions are permanent.

56. Plaintiff, in her capacity as legal guardian of Karen Chandler, prays for judgment against the Defendants, and each of them jointly and severally, for special damages, the exact amount to be determined at trial, for general damages, prejudgment interest and costs.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, as the legal guardian of Karen Chandler, respectfully prays the Court enter an Order for Judgment jointly and severally against Defendants as follows:

1. For damages in an amount to adequately compensate Plaintiff for the injuries and damages sustained, plus costs and all other relief to which Plaintiff is entitled by law;

2. For all general and special damages caused by the alleged conduct of Defendants, in an amount to be determined by a jury, plus all costs and all other relief to which Plaintiff is entitled by law;

3. For consequential damages due to breach of contract;

4. For the costs of litigating this case;

5. For prejudgment interest;

6. For all other relief to which Plaintiff is entitled by Nebraska law.

Plaintiff respectfully requests trial by jury.

10

03/09/2009 MON 11:39 FAX                                                                      ☒014/017

Dated this 23rd day of February, 2009.

                                 DENEISE INGRAM, as Legal Guardian for
                                 KAREN CHANDLER, Plaintiff

By: _____
       Matthew G. Miller, #19092
       6910 Pacific Street, Suite 103
       Omaha, Nebraska 68106
       402-558-4900
       ATTORNEY FOR PLAINTIFF

11

03/09/2009 MON 11:39 FAX                                                                    ☒015/017

## IN THE COUNTY COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| GUARDIANSHIP AND ) | PR 08-602 |
| CONSERVATORSHIP, ) | |
| FOR: ) | |
| KAREN CHANDLER ) | **ORDER APPOINTING GUARDIAN** |
| ) | **AND CONSERVATOR** |
| ) | |
| ) | |

The Petition of Deneise Ingram for appointment of Permanent Guardian and Conservator for Karen Changler, an incapacitated person, is before the Court, the incapacitated person represented by Amy L. Mattern, 1905 Harney Street, Suite 640, Omaha, Nebraska. The Court finds as follows:

1. Petitioner is entitled to file the Petition pursuant to Nebraska Probate Code §30-2633.

2. Venue in this county is proper and the notices required by law have been given or waived.

3. The above person is incapacitated and the appointment of a permanent Guardian and Conservator is necessary or desirable as a means of providing continuing care and supervision of the estate and person of Karen Chandler.

4. Deneise Ingram is competent to serve and have been nominated for appointment as Guardian and Conservator by the incapacitated person pursuant to Neb. Rev. Stat. §30-2627(b)(6) and (b)(3).

5. _____ No bond is required.

   X  Bond is required in the amount of $12,000.00.

FILED
COUNTY COURT
PROBATE DIVISION

JUN 10 2008

By: Leslie Douglas
Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA


EXHIBIT
A

6.  Karen Chandler's retirement account held with Vanguard shall be placed in a restricted account and withdraws from said account shall be permitted only per court order. Proof of said restriction shall be filed with the Court.

IT IS THEREFORE ORDERED that Karen Chandler is an incapacitated person; that Deneise Ingram is hereby appointed Permanent Guardian and Conservator of Karen Chandler; and that Letters of Guardianship and Conservatorship shall be issue to the Guardian and Conservator upon the filing of her acceptance.

DATED this __19__ day of JUNE, 2008.

BY THE COURT:

_/s/ Marcena M. Hendrix_
Honorable Marcena M. Hendrix

FILED
COUNTY COURT
PROBATE DIVISION

JUN 19 2008

By: Laurie Douglas
Clerk of Court
DOUGLAS COUNTY COURT
OMAHA, NEBRASKA

**PREPARED AND SUBMITTED BY:**
Amy L. Mattern, 22329
Whitner Law Firm, P.C., L.L.O.,
1905 Harney Street, Suite 640
Omaha, Nebraska 68102
(402) 344-7797
(402) 344-7798 (facsimile)

03/09/2009 MON 11:33 FAX                                                                 ☒002/017


## CT Corporation

**Service of Process Transmittal**
03/02/2009
CT Log Number 514510169

**TO:** Andrew F Torok, General Counsel
COVENANT CARE
27071 Aliso Creek Road, Suite 100
Aliso Viejo, CA 92656-

**RE:** Process Served in Nebraska

**FOR:** Covenant Care Midwest, Inc. (Domestic State: CA)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**TITLE OF ACTION:** Deneise Ingram, As legal guardian for Karen Chandler, Pltf. vs. Covenant Crae Midwest, Inc. dba Nebraska Skilled Nursing and Rehabilitation and Covenant Care, Inc., Dfts.

**DOCUMENT(S) SERVED:** Summons and Complaint

**COURT/AGENCY:** District Court of Douglas County, NE
Case # Doc. 1092 No. 643

**NATURE OF ACTION:** Medical Injury - Improper Care and Treatment - Plairitiff was seriously and permanently injured due to negligence of the Defendant.

**ON WHOM PROCESS WAS SERVED:** C T Corporation System, Lincoln, NE

**DATE AND HOUR OF SERVICE:** By Certified Mail on 03/02/2009 postmarked on 02/27/2009

**APPEARANCE OR ANSWER DUE:** Within 30 days of service

**ATTORNEY(S) / SENDER(S):** Mastthew G. Miller
6910 pacific Street
Ste. 103
Lincoln, NE 68106
402-558-4900

**ACTION ITEMS:** SOP Papers with Transmittal, via Fed Ex 2 Day, 790161217838

**SIGNED:** C T Corporation System
**ADDRESS:** 301 South 13th Street
Suite 500
Lincoln, NE 68508
**TELEPHONE:** 402-437-8500

Page 1 of 1 / LL

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

